IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 20- _____ |
| | : | DATE FILED: _____ |
| v. | : | VIOLATIONS:<br>18 U.S.C. § 1343 (wire fraud- 6 counts) |
| | : | 42 U.S.C. § 1383a(a)(4)(Social Security |
| ELAINE SIMPSON | | fraud- 1 count) |
| | : | Notice of Forfeiture |

**I N D I C T M E N T**

**COUNTS ONE TO SIX**

(Wire Fraud)

**THE GRAND JURY CHARGES THAT:**

At all times relevant to this indictment:

<u>The Supplemental Security Income Program</u>

1.  The Social Security Administration ("SSA"), an agency of the United States, administered certain government benefit programs, including the Supplemental Security Income ("SSI") program, pursuant to Title 42, United States Code, Sections 1381-1383f.

2.  The SSI program, which was funded through general tax revenues of the United States, provided monthly cash benefits to individuals who were age sixty-five or over, who were "disabled" and who demonstrated financial need, as determined by his or her "income" and "resources," as those terms were defined for purposes of the Social Security Act.

3.  The Social Security Administration's Representative Payee Program provided Social Security benefit payment management for beneficiaries who are incapable of managing their SSA administered payments. When a beneficiary was not able to manage their SSA

payments, a person or organization was designated to manage the beneficiary's SSA benefit payments. Typically, a family member of the beneficiary served as the representative payee.

4. Once appointed by the SSA, representative payees must use the beneficiary's SSA benefit payments to help create a stable living environment for the beneficiary and ensure that basic needs of food, shelter, clothing and medical care are met. If SSA benefit funds remain after current basic needs are met, the representative payee must save the remaining funds for the beneficiary's future use. A representative payee may not use benefit funds for their personal use.

### The Intended Beneficiary

5. On or about February 28, 1996, defendant ELAINE SIMPSON protectively filed for Supplemental Security Income benefits for her daughter, Q.B., based on permanent developmental and intellectual disability.

6. On or about August 26, 1996, defendant ELAINE SIMPSON completed an application to serve as Q.B.'s representative payee (Form SSA-11-BK) and submitted the form to the SSA. The form required, among other items, the proposed representative payee to acknowledge under penalty of perjury that she understood she a) must and would use all payments for the SSA beneficiaries' current needs, or save them for their future needs, b) may be punishable under federal law if found guilty of misuse of SSA benefits, c) would send an annual accounting report to SSA regarding how the SSA benefits were used, and d) would return checks to SSA that the SSA beneficiary was not due.

7. In or about November 1996, the SSA awarded these benefits to Q.B. based on permanent disability. Q.B.'s disability rendered her incapable of managing her own benefits and defendant ELAINE SIMPSON was approved by the SSA to serve as Q.B.'s representative payee. As representative payee, defendant SIMPSON was charged with using the benefits for the daily

needs of Q.B. Once accepted as the representative payee, a bank account was opened by defendant SIMPSON for the benefit of Q.B., and the SSA sent electronic monthly transfers to this bank account. Defendant SIMPSON had access to the bank account to withdraw and transfer funds.

8. As the representative payee for Q.B.'s benefits, the SSA required defendant Elaine Simpson to complete an annual Representative Payee Report certifying that the benefit funds were used for the beneficiary and accounting for their use.

## THE SCHEME TO DEFRAUD

9. From in or about January 2013 to in or about September 2019, within the Eastern District of Pennsylvania, defendant

**ELAINE SIMPSON,**

did knowingly devise and intend to devise a scheme and artifice to defraud the United States and to obtain money from the United States by means of material false and fraudulent pretenses, representations, and promises.

10. It was the object of the scheme for defendant ELAINE SIMPSON to receive approximately $58,752 in SSI payments intended for the benefit of Q.B. that defendant SIMPSON spent for her own personal use.

## MANNER AND MEANS

It was part of the scheme that:

11. Defendant ELAINE SIMPSON removed Q.B. as a tenant in her home in January 2013.

12. Defendant ELAINE SIMPSON concealed from, and omitted to disclose to the SSA that her daughter Q.B., on whose behalf SSA benefits payments were paid, was no longer

living in defendant SIMPSON's home, and defendant SIMPSON falsely represented that the benefits being electronically transferred to an account to be used on behalf of Q.B. were still being used for Q.B.'s care and support, when, in fact, defendant ELAINE SIMPSON fraudulently converted the SSA benefit payments to her own use.

13. On Representative Payee Reports dated October 30, 2013, February 24, 2014, October 27, 2014, January 8, 2015, November 19, 2015, January 26, 2016, October 5, 2016, October 24, 2017 and November 27, 2017, defendant ELAINE SIMPSON falsely represented to the SSA that there had been no change to Q.B.'s living situation and that she spent the entirety of benefits for the care of Q.B. These forms specifically directed the representative payee to add the beneficiary's current address if it had changed and defendant SIMPSON falsely represented to the SSA that there was no change to Q.B.'s living situation and that she spent the entirety of the benefits for the needs of Q.B.

14. Rather than defendant ELAINE SIMPSON using the benefits intended for Q.B. to pay for Q.B.'s shelter, food and medical needs, in approximately June 2017, Q.B. was discovered to be chronically street homeless and engaging with a local community organization to provide for Q.B.'s medical and dental needs, shoes, meals and laundry services and other comfort services, such as a location to shower. From at least in or about June 2017 through in or about January 2020, this community organization provided almost all basic necessities for Q.B. including food, clothing and shelter as well as access to medical and dental care.

15. As a representative payee for Q.B., defendant ELAINE SIMPSON was required to use any Social Security benefits received on behalf of Q.B. solely for Q.B.'s needs and to save any currently unneeded benefits for future use. Defendant SIMPSON was also required to notify the SSA when Q.B. ceased residing with her and when defendant SIMPSON was no longer

managing her care. Defendant SIMPSON did not use the benefits for Q.B. as required and did not give the required notices.

16. Defendant ELAINE SIMPSON routinely withdrew all the Social Security benefit funds from the bank account each month, for her own personal use.

17. Based on the false information defendant ELAINE SIMPSON provided SSA as Q.B.'s representative payee, SSA deposited a total of approximately $58,752.00 in SSI benefit payments into the bank account for the benefit of Q.B. from in or about January 2013 to in or about September 2019.

18. From in or about January 2013 through in or about September 2019, in the Eastern District of Pennsylvania and elsewhere, defendant

**ELAINE SIMPSON**

for the purpose of executing the scheme and artifice to defraud the United States, described above, and attempting to do so, knowingly caused to be transmitted in interstate commerce, by means of wire communication, certain signs, signals and sounds, namely, a wire transfer of funds representing benefit payments from the SSA to defendant ELAINE SIMPSON for the benefit of Q.B. as described below (each transfer constituting a separate count of this indictment):

| COUNT | DATE | WIRE TRANSACTION |
|---|---|---|
| 1 | August 1, 2019 | SSA payment of $771.00 for the benefit of Q.B. by wire transfer from Baltimore, Maryland to Kansas City, Missouri, to East Rutherford, New Jersey, to Detroit, Michigan, to the Eastern District of Pennsylvania. |
| 2 | July 1, 2019 | SSA payment of $771.00 for the benefit of Q.B. by wire transfer from Baltimore, Maryland to Kansas City, Missouri, to East Rutherford, New Jersey, to Detroit, Michigan, to the Eastern District of Pennsylvania. |
| 3 | May 31, 2019 | SSA payment of $771.00 for the benefit of Q.B. by wire transfer from Baltimore, Maryland to Kansas City, Missouri, to East Rutherford, New Jersey, to Detroit, Michigan, to the Eastern District of Pennsylvania. |

| | | |
|---|---|---|
| 4 | May 1, 2019 | SSA payment of $771.00 for the benefit of Q.B. by wire transfer from Baltimore, Maryland to Kansas City, Missouri, to East Rutherford, New Jersey, to Detroit, Michigan, to the Eastern District of Pennsylvania. |
| 5 | April 1, 2019 | SSA payment of $771.00 for the benefit of Q.B. by wire transfer from Baltimore, Maryland to Kansas City, Missouri, to East Rutherford, New Jersey, to Detroit, Michigan, to the Eastern District of Pennsylvania. |
| 6 | March 1, 2019 | SSA payment of $771.00 for the benefit of Q.B. by wire transfer from Baltimore, Maryland to Kansas City, Missouri, to East Rutherford, New Jersey, to Detroit, Michigan, to the Eastern District of Pennsylvania. |

All in violation of Title 18, United States Code, Section 1343.

## COUNT SEVEN

(Social Security Fraud)

**THE GRAND JURY FURTHER CHARGES THAT:**

1. Paragraphs 1 through 8 and 11 through 17 of Counts One through Six of this indictment are realleged here.

2. From in or about January 2013 through in or about September 2019, in the Eastern District of Pennsylvania and elsewhere, defendant

### ELAINE SIMPSON

having made an application to receive payment of Social Security benefits for the use and benefit of a beneficiary and having received such payments, did willfully and knowingly convert such payments to a use other than for the care and support of the beneficiary.

In violation of Title 42, United States Code, Section 1383a(a)(4).

## NOTICE OF FORFEITURE

**THE GRAND JURY CHARGES THAT:**

    1.    As a result of the violations of Title 18, United States Code, Section 1343, set forth in this information, defendant

**ELAINE SIMPSON**

shall forfeit to the United States of America:

    (a)    any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of such offense; including but not limited to the sum of $58,752.

    2.    If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the Court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant(s) up to the value of the property subject to forfeiture.

All pursuant to Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 981(a)(1)(C).

A TRUE BILL:

_____
**GRAND JURY FOREPERSON**

for _(signature)_
**WILLIAM M. McSWAIN**
**United States Attorney**